IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES B. RAMSEY, ) | |
| ) | |
| Petitioner, ) | Case No. CV 07-0153-S-EJL |
| ) | |
| v. ) | |
| ) | **MEMORANDUM ORDER** |
| RANDY BLADES, Warden, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Before the Court in this habeas corpus matter is Respondent's Motion for Summary Judgment. Petitioner has filed a response, and the matter is now ripe for the Court's decsion. The Court finds that decisional process will not be aided by oral argument, and it shall resolve this matter on the written record after consideration of the parties' submissions. D. Idaho L. Civ. R. 7.4(d).

For the reasons that follow, the Court will grant Respondent's Motion, and the Petition shall be denied.

## BACKGROUND

In 2001, the State charged Petitioner with robbery, use of a firearm during the commission of a crime, aggravated assault, and grand theft. Deputy Ada County Public Defender D.C. Carr was assigned to represent Petitioner. While the case was still in a pretrial posture, Petitioner was involved in an altercation at the county jail in which he punched another inmate named Henry Howard, who fell back and hit his head, resulting in a serious

**MEMORANDUM ORDER - 1**

injury. Based on this incident, the State charged Petitioner in a separate case with aggravated battery. The Ada County Public Defender's Office represented Henry Howard in his unrelated criminal matters.

In May 2002, Petitioner agreed to plead guilty to robbery, aggravated assault, and grand theft in exchange for the State's agreement to dismiss the firearm count and the separate aggravated battery case based on the jailhouse fight with Howard.[1] As part of the agreement, the parties would be free to recommend whatever sentences that they believed to be advisable. (State's Lodging A-2, pp. 1-4.)

At the subsequent sentencing hearing, despite acknowledging that Petitioner had a "long history of drug use," the prosecutor emphasized that he was in custody and "alcohol free, drug free" when he "threw a sucker punch at Mr. Howard." (State's Lodging A-2, p. 24.) Carr countered that Petitioner was "a completely different person when he's off drugs than when he's on drugs." (State's Lodging A-2, p. 27.) Carr did not dwell on jailhouse fight, stating only that "I can't explain the Henry Howard situation. I do know Mr. Howard. He's a client of ours, has been for a long time, and I do know that I saw him yesterday, and he seems fine, thank God." (State's Lodging A-2, p. 27)

The district court sentenced Petitioner to life in prison with the first 20 years fixed for robbery, a concurrent 14-year fixed sentence for grand theft, and a concurrent five-year determinate sentence for aggravated assault. (State's Lodging A-1, pp. 43-46.) After noting several factors that supported the sentences, the court stated, "the fact that he attacked

---

[1] The State also agreed not to pursue charges in other potential cases.

**MEMORANDUM ORDER - 2**

someone in the jail later convinces me that the court needs to look at this at the higher end of the seriousness rather than at the lower end." (State's Lodging A-2, p. 33.) Petitioner's challenge to his sentences on direct appeal was unsuccessful. (State's Lodgings B-3.)

On April 21, 2004, Petitioner filed an application for post-conviction relief, alleging that Carr suffered from an actual conflict of interest at the sentencing hearing because the Ada County Public Defender's Office also represented Henry Howard in other criminal matters. (State's Lodging C-1, pp. 1-4.) Petitioner asserted that Carr's conflict prevented him from showing that Howard was the aggressor in the fight or that Petitioner at least did not throw a "sucker punch," as argued by the prosecutor. (State's Lodging C-2, pp. 5-7.) Petitioner also claimed that Carr failed to investigate and present other relevant evidence in mitigation of punishment. (State's Lodging C-2, pp. 8-9.) The district court dismissed the application without holding an evidentiary hearing. (State's Lodging C-1, p. 44.)

On appeal, the Idaho Court of Appeals affirmed the lower court's decision. In rejecting Petitioner's conflict of interest claim, the Court of Appeals noted that Petitioner had failed to proffer any evidence, even his own affidavit, that tended to show a version of the fight that differed materially from the version that was given by the prosecutor at sentencing. (State's Lodging D-4, p. 4.) The Court of Appeals concluded that Petitioner's "assertion that the alleged conflict of interest adversely affected Carr's representation . . . is merely speculative and unsupported by evidence." (State's Lodging D-4, p. 5.) It relied on a similar rationale in finding Petitioner's claim of ineffective assistance of counsel to be without merit. (State's Lodging D-4, pp. 4-5.) Petitioner's subsequent Petition for Review was denied.

**MEMORANDUM ORDER - 3**

On March 30, 2007, Petitioner filed the present action, again alleging that his Sixth Amendment right to the effective assistance of counsel was violated by Carr's purported conflict of interest at the sentencing hearing. Respondent filed an Answer and a Motion for Summary Judgment, to which Petitioner has now responded with the assistance of counsel.

## STANDARD OF LAW

The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. Under Rule 56(c), summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id*. In general, summary judgment is not inconsistent with habeas practice and procedure, *see Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977), but a motion for summary judgment in a habeas case must be reviewed in light of the substantive provisions of the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA").

The AEDPA requires a federal court to defer to reasonable state court adjudications on the merits of constitutional claims. Accordingly, an application for writ of habeas corpus shall not be granted unless the state court's adjudication of a claim either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable

**MEMORANDUM ORDER - 4**

>        determination of the facts in light of the evidence presented in the
>        State court proceeding.

28 U.S.C. § 2254(d)(1)&(2).

Section 2254(d)(1) contains a "contrary to" and an "unreasonable application" clause, each with an independent meaning. To show that a decision is "contrary to" federal law, a petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the "unreasonable application" clause, the petitioner must establish that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Id*. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the state court decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). Although the controlling federal law is derived from the holdings of United States Supreme Court cases, a federal court may look to lower court cases for persuasive guidance as to what is a reasonable interpretation of the law. *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

Section 2254(d)(2) is applicable to a review of a state court's factual findings. Under that subsection, the petitioner must show that the state court's decision was based upon

**MEMORANDUM ORDER - 5**

factual determinations that were "unreasonable in light of the evidence presented in the State court proceeding." *Id*.

## CLEARLY ESTABLISHED FEDERAL LAW

A criminal defendant has a constitutional right to the effective assistance of counsel under the Sixth Amendment, which has been made applicable to the states by the due process clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). To establish a violation of this right, the defendant must ordinarily show that his counsel's performance was unreasonably deficient and that the defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Prejudice means that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Id*. at 694.

In very limited circumstances the defendant will be relieved of his burden to show a reasonable probability of a different outcome. *United States v. Cronic*, 466 U.S. 648, 658 (1984). One such circumstance is when counsel suffered from an actual conflict of interest that adversely affected his performance. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). An actual conflict of interest for purposes of the Sixth Amendment is not found in a "mere theoretical division of loyalties," nor is it "something separate and apart from adverse effect." *Mickens v. Taylor*, 535 U.S. 162, 171, 172 n. 5. (2002). Thus, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

**MEMORANDUM ORDER - 6**

An actual conflict of interest is established when counsel is influenced in his most basic strategic decisions by divided loyalties or by a duty to another client. *United States v. Rodrigues*, 347 F.3d 818, 823 (9th Cir. 2003) (citing *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002). Put another way, Petitioner must demonstrate "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (internal quotation marks omitted).

## DISCUSSION

The Idaho Court of Appeals released the relevant state court decision that is at issue here. In its opinion, the court cited the correct constitutional standards regarding ineffective assistance of counsel and conflicts of interest, as set out in *Strickland*, *Wood*, *Sullivan*, and *Mickens*. (State's Lodging D-4, pp. 3-4.) In addition, the court did not confront a set of facts materially indistinguishable from those cases and yet arrive at a different result. Therefore, the decision was not "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)(1).

Petitioner instead contends that the state court unreasonably applied federal law, and made unreasonable findings of fact, when it concluded that he had not shown that his counsel's performance was adversely impacted by the alleged conflict. He cites, as supposed adverse effects, Carr's failure to discuss the jailhouse incident with him before sentencing and Carr's unilateral decision to change the sentencing strategy from one seeking a retained

**MEMORANDUM ORDER - 7**

jurisdiction to one asking for straight prison time.

As an initial matter, Petitioner has not shown a causal link between the alleged conflict and these perceived deficiencies in Carr's performance.  *See, e.g., United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (holding that counsel's divided loyalties must *influence* his basic strategic decisions).  Carr's apparent failure to focus more intensely on the altercation between Howard and Petitioner could have been based on any number of motivations other than a conflict, including general tactical concerns or even simple inattention.

More important, this Court agrees with the state courts that Petitioner has never proffered any reliable evidence that would tend to show an alternative version of the fight that might have helped him at the sentencing hearing.  That is, regardless whether Carr could have conducted a more thorough investigation into the matter, Petitioner has not alleged a colorable claim that "some plausible alternative defense strategy or tactic" actually existed.  *See United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005).

**MEMORANDUM ORDER - 8**

The witness statements in the contemporaneous police reports consistently described the encounter as a brief one in which Petitioner walked up to Howard and hit him one time in the face while he was standing defenseless by his cell.  (State's Lodging A-3, pp. 57-82.) Petitioner himself told the police that he punched Howard because he was a "snitch" who had "a big mouth," and he just "wanted to shut [Howard] up."  (State's Lodging A-3, pp. 74, 80-81.)  He did not offer any evidence in state court, or here, that materially contradicts this narrative, and his conclusory assertion that Carr could have shown that he was acting in self-defense is contrary to all other information in the record.  At best, Carr may have been able to argue that Petitioner did not completely "blindside" Howard and that he later expressed remorse, but these facts would have been immaterial given the undisputed sudden and violent nature of the attack.

Petitioner also suggests that counsel's duty of loyalty to Howard prevented him from offering "information to the sentencing court regarding [Howard's] past record, including involvement with controlled substances and history of crimes of moral turpitude."  (Docket No. 15, p. 6.)  But he does not explain how this information would have relevant or admissible to impeach Howard given that he did not testify against Petitioner.  And, as the Court of Appeals noted, "[i]t would have been a dubious strategy, indeed, for attorney Carr to call Howard to testify at the sentencing hearing while having no reason to believe that Howard would admit to being an aggressor or provocateur."  (State's Lodging D-4, p. 5.)

**MEMORANDUM ORDER - 9**

While Petitioner may not need to prove a reasonable probability of a different sentencing outcome, he must still come forward with specific facts showing that any alleged conflict had an *adverse effect* on the representation. He has not done so. Accordingly, this Court concludes that the Idaho Court of Appeals' adjudication of the constitutional claim is not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor is the decision based on an unreasonable determination of the facts in light of the evidence presented. Respondent is entitled to judgment as a matter of law, and his Motion for Summary Judgment shall be granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 8) is GRANTED.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

DATED: **July 23, 2008**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 10**